IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| PETER BYRNE,<br><br>        Plaintiff,<br><br>    v.<br><br>NATIONAL SECURITY AGENCY, et al.,<br><br>        Defendants. | Case No.  20-cv-08433-CRB<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT** |

Plaintiff Peter Byrne sued the National Security Agency and the Department of Defense (collectively, "NSA") based on the purported failure to produce responsive records pursuant to his Freedom of Information Act ("FOIA") request.  Compl. (dkt. 1). Byrne sought information regarding two operations—Operation Gauntlet and Operation Tailwind—during the Vietnam War.  Compl. ¶ 11.  The parties filed cross-motions for summary judgment on whether NSA's search was reasonable and whether its exemptions were appropriate.  See NSA MSJ (dkt. 94); Byrne MSJ (dkt. 97)[1].  The motions have been fully briefed.  See NSA Reply (dkt. 101); Byrne Reply (dkt. 102).  Having reviewed the parties' briefs as well as the documents at issue in camera, the Court **GRANTS** NSA's motion for summary judgment and **DENIES** Byrne's motion.[2]

"FOIA cases are typically and appropriately decided on motions for summary judgment."  Polk v. Fed. Bureau of Investigation, No. 14-CV-4667-PJH, 2016 WL 80564,

---

[1] Bryne's brief was an opposition to NSA's motion for summary judgment in addition to his own cross-motion.

[2] The Court deems this matter suitable for resolution without oral argument pursuant to Civil Local Rule 7-1(b).  The Court presumes familiarity with the facts and applicable law.

United States District Court<br>Northern District of California

at *4 (N.D. Cal. Jan. 7, 2016) (internal citation omitted), aff'd, 693 F. App'x 553 (9th Cir. 2017). As FOIA cases rarely involve issues of disputed fact, courts do not apply the typical summary judgment standard. See id. Instead, courts conduct a two-step inquiry. First, a court must evaluate whether a government agency's search for documents was reasonable. See Zemansky v. U.S. E.P.A., 767 F.2d 569, 571 (9th Cir. 1985). If the agency meets its burden, the court reviews whether any undisclosed information fell within a FOIA exemption. See Polk, 2016 WL 80564 at *5. The Court agrees with NSA that its search for responsive records was reasonable and that it properly invoked exemptions to FOIA.

### A.    Reasonable Search

NSA's search satisfies the standard of reasonableness. "An adequate search is one that is reasonably calculated to uncover all relevant documents." Pomares v. Dep't of Veterans Affs., 113 F.4th 870, 879 (9th Cir. 2024) (internal quotation omitted). Courts do not consider "whether the agency produced every responsive document but rather whether its search was reasonable." Id. Agencies can demonstrate adequate searches by relying on "reasonably detailed, nonconclusory affidavits submitted in good faith." Zemansky, 767 F.2d at 571 (citing Weisberg v. United States Dept. of Justice, 745 F.2d 1476, 1485 (D.C.Cir.1984)). "Affidavits submitted by an agency are entitled to a presumption of good faith." First Amend. Coal. v. U.S. Dep't of Just., No. 18-CV-05731 SBA, 2021 WL 4926977, at *4 (N.D. Cal. Mar. 31, 2021) (citing SafeCard Servs., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991)).

NSA has provided such a declaration (and a supplemental one) from Joy Garrett, the Acting Chief of Enterprise Guidance Services at NSA. See Garrett Decl. (dkt. 94-2); Garrett Supp. Decl. (dkt. 101-1). Garrett's declaration comprehensively walks through NSA's three searches pursuant to Byrne's request. See Garrett Decl. ¶¶ 15–46 (search terms such as "operation gauntlet" and "Laos AND radio communication AND ((POW OR prisoner of war)").

Nevertheless, Byrne offers three main arguments for why NSA's search was still

inadequate.  He contends that Garrett's declaration lacks detail[3], that NSA does not explain why it narrowed the scope of the agency components it searched, and that NSA excluded his requested search terms.  Byrne MSJ at 8–16.  Each argument is unavailing.

### 1. Declaration Detail

For starters, Garrett's declaration generally sets forth "the search terms and the type of search performed, and aver[s] that all files likely to contain responsive materials (if such records exist) were searched."  Polk, 2016 WL 80564 at *5 (quoting  Mobley v. CIA, 806 F.3d 568, 580-81 (D.C. Cir. 2015)).  The declaration covers each of the search terms used for text mining, the locations searched, and even examples of documents reviewed.  See Garrett Decl. ¶¶ 15–46.  For example, NSA used the term "Laos AND radio communication AND ((POW) OR prisoner of war)," which targets documents responsive to Byrne's request for radio communication records related to American prisoners of wars in Laos.  See id. ¶ 15; Compl. ¶ 11.  Byrne, however, says more is required .  He argues that the declaration omits specific details, such as how the text mining searches were conducted or how long the process took.  See Byrne MSJ at 10 (describing Garrett's declaration as "boilerplate and entirely conclusory").  But affidavits "need not set forth with meticulous documentation the details of an epic search for the requested records."  Transgender L. Ctr. v. Immigr. & Customs Enf't, 46 F.4th 771, 780 (9th Cir. 2022) (citation modified).  What Garrett describes is sufficient and entitled to a presumption of good faith.[4]

### 2. Scope of Agency Components

Next, Byrne asserts that NSA does not adequately explain why it "unreasonably

---

[3] Byrne also argues that Garrett "fails to declare that she has personal knowledge of the searches." Byrne MSJ at 8–9.  But courts have squarely held that "an agency's declarations in FOIA cases are exempt from [a] 'personal knowledge requirement.'"  Schoeffler v. United States Dep't of Agric., 795 F. App'x 526, 527 (9th Cir. 2020) (quoting Garris v. FBI, 937 F.3d 1284, 1292–93 (9th Cir. 2019)).  In his reply, Byrne appears to reframe his argument to assert that he meant Garrett lacked enough knowledge to provide a sufficiently detailed declaration.  See Byrne Reply at 3.  As the Court will explain, Garrett's declaration meets the standard for reasonableness.

[4] Garrett's supplemental declaration provides additional information to assuage Byrne's concerns, such as explaining how text mining is the method by which a reviewer uses keywords to search electronic records.  See Garrett Supp. Decl. ¶ 18.

narrowed the scope of components it searched." Byrne MSJ at 10. He agrees that NSA searched the Records Management Division, the Center for Cryptologic History, one NSA Operations Directorate office, the office that handles NSA engagement with the White House, and the office that handles all formal interagency correspondence. Id. But he argues that NSA's stated reason for searching those particular components is conclusory and that NSA must explain why it did not search other ones. Id. at 11. The Court disagrees.

Garrett avers that those "specific offices were all selected to conduct searches based on the historical age of the records sought by the FOIA request, the subject matter of the request, and the request's prongs asking for interagency communications." Garrett Decl. ¶ 26. She also explains that the White House and interagency engagement offices "were the most likely to have custody of any responsive documents" based on Byrne's request for communications between officials at the Pentagon, State Department, and the White House. Id. ¶ 27. Such reasoning is hardly conclusory.

Moreover, Byrne cannot point to any legal authority that requires NSA to explain why it did not search all other component offices. Cf. Valencia-Lucena v. U.S. Coast Guard, 180 F.3d 321, 327 (D.C. Cir. 1999) ("It is well-settled that if an agency has reason to know that certain places may contain responsive documents, it is obligated under FOIA to search barring an undue burden." (emphasis added)). Nevertheless, Byrne argues that NSA should have searched its Vietnam Prisoner of War/Missing in Action Documents database as, based on his review, it has potentially responsive documents. Byrne MSJ at 11. But Garrett explains that NSA did search that database because it was jointly maintained by the Records Management Division, one of the components identified in her original declaration. Garrett Supp. Decl. ¶ 5. NSA merely concluded that the records in the database were "not responsive to the request and/or outside the scope of the request." Id. That lines up with Byrne identifying documents in the database that contained NSA's search terms but were not turned over as responsive. See Byrne Decl. (dkt. 98) ¶¶36–40.

4

United States District Court
Northern District of California

### 3.    Byrne's Search Terms

Byrne also argues that NSA's search was inadequate because it deliberately excluded his requested search terms. Byrne MSJ at 12. But "[i]in general, government agencies have discretion in crafting search terms designed to identify responsive records." Inter-Coop. Exch. v. United States Dep't of Com., 36 F.4th 905, 911 (9th Cir. 2022) (internal citation omitted). "For this reason, a FOIA requester cannot dictate the search terms for his or her FOIA request." Id. (citation modified). "Where the search terms are reasonably calculated to lead to responsive documents, a court should neither micromanage nor second guess the agency's search." First Amend. Coal., 2021 WL 4926977 at *6 (internal quotation omitted). In an effort to circumvent this restriction, Byrne casts his argument as centering on NSA's limitation of its search terms "to only the specific terms that appear in [his] request." Byrne MSJ at 12.

But NSA did not reject Byrne's search terms out of strict adherence to his FOIA request. It evaluated each requested term and merely concluded that they were not "reasonably crafted to uncover additional responsive documents." See Garrett Decl. ¶¶ 33–38. For example, Byrne requested that NSA use the term "Honorable Dragon," an operation Byrne argues was a part of Operation Gauntlet based on the book Shadow War. See Byrne MSJ at 13. Garrett explains that NSA did not use this term because "the book cited by [Byrne] contains no sources regarding the term 'Honorable Dragon,' does not mention the term 'Operation Gauntlet' in connection with the term 'Honorable Dragon,' and does not connect the term Honorable Dragon to NSA." Garrett Decl. ¶ 33. She notes that the term "Operation Gauntlet" did not even "appear in the book's glossary or index." Id. Accordingly, given that NSA used search terms reasonably tailored to uncover responsive documents and explained why it rejected Byrne's requested terms, the Court "will not micromanage or second guess" NSA's search. See First Amend. Coal., 2021 WL 4926977 at *6 (rejecting challenge to search terms where the agency explained why requested terms were denied).

5

### B.      Exemptions

NSA invoked two exemptions from information disclosure: Exemption 1 and Exemption 3.  See Garrett Decl. ¶ 47.

Section 552(b)(1) of FOIA establishes Exemption 1, which permits withholding materials "in the interest of national defense or foreign policy" and "properly classified pursuant to [an] Executive order."  5 U.S.C. § 552(b)(1).  Garrett states that the pertinent Executive Order for Byrne's request is E.O. 13526.  Garrett Decl. ¶ 53.  Section 1.4(c) of the Executive Order permits classification for "intelligence activities (including covert action), intelligence sources or methods, or cryptology" if unauthorized disclosure "could reasonably be expected to cause identifiable or describable damage to the national security."  Classified National Security Information, Exec. Order No. 13,526, § 1.4(c), 75 Fed. Reg. 707, 707 (Dec. 29, 2009).  Garrett asserts that the withheld information "includes material revealing specific intelligence targets, [signals intelligence] access to those targets, and other information that could potentially reveal NSA's intelligence capabilities, sources, and/or methods."  Garrett Decl. ¶ 57.

NSA argues that Exemption 3 also covers the withheld information.  NSA Reply at 11.  Exemption 3 is codified in Section 552(b)(3) of FOIA.  Under that provision, an agency may withhold information if there is a separate statute that specifically exempts matters from disclosure.  5 U.S.C. § 552(b)(3).  The additional statute must either require withholding without discretion or establish criteria or refer to types of matters to be withheld.  Id.  Garrett points to three statutes that NSA relied on for exemption: Section 6 of the National Security Act of 1959, 18 U.S.C. § 798, and the National Security Act of 1947 (as amended by the Intelligence Reform and Terrorism Prevention Act of 2004).  Garrett Decl. ¶ 68.  According to NSA, the statutes protect strengths and weaknesses of NSA's signal intelligence efforts.  Id.

The Court has reviewed the withheld material in camera and concludes that NSA's withholding was appropriate under the exemptions.

For the foregoing reasons, NSA's motion for summary judgment is **GRANTED**

and Byrne's motion is **DENIED**.  This case is dismissed with prejudice with a separate judgment to follow.

> **IT IS SO ORDERED.**
>
> Dated: June 4, 2026



CHARLES R. BREYER
United States District Judge

United States District Court
Northern District of California